UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JAMES DANIELS,<br><br>    *Plaintiff*,<br><br>v.<br><br>BIOMET, INC.; ZIMMER BIOMET HOLDINGS, INC.; GREG BAFFES; and BONEAFIDE ORTHOPAEDICS, INC.,<br><br>    *Defendants*. | Civil Action No.:<br><br>Judge:<br><br>Magistrate: |

## NOTICE OF REMOVAL

Defendants Biomet, Inc. and Zimmer Biomet Holdings, Inc. (collectively, "Zimmer Biomet") remove the action captioned *James Daniels v. Biomet, Inc., et al.*, Case No. 23-7481, in the Civil District Court for the Parish of Orleans to this Court based upon diversity of citizenship and an amount in controversy exceeding $75,000. *See* 28 U.S.C. §§ 1332, 1441, and 1446.[1] In support of removal, Zimmer Biomet states as follows:

    1.    Plaintiff James Daniels commenced an action against Biomet, Inc., Zimmer Biomet Holdings, Inc, Greg Baffes ("Baffes"), and Boneafide Orthopaedics ("Boneafide") in the Civil District Court for the Parish of Orleans, State of Louisiana, entitled *James Daniels v. Biomet, Inc., et al.*, No. 2023-07481. The complete record of this state court action is attached as **Exhibit A**.

    2.    As more fully set forth below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441 because Defendant Zimmer Biomet has satisfied the procedural requirements

---

[1] By filing this Notice, Zimmer Biomet does not waive any jurisdictional or other defenses it may have concerning Plaintiff's claims.

1

for removal and this Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

**I.     Removal is Timely and Procedurally Proper.**

3.     Federal statute provides that "[e]ach defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons . . . to file [a] notice of removal." 28 U.S.C. § 1446(b)(2)(B). Biomet, Inc. was served by certified mail on August 14, 2023. *See* Ex. A at p. 11. Zimmer Biomet Holdings, Inc. was served by certified mail on August 15, 2023. *See* Ex. A at p. 12. This removal is, therefore, timely under 28 U.S.C. § 1446.

4.     Zimmer Biomet has not made an appearance in the state court action. *See id.* No previous application has been made for the request in this Notice.

5.     All properly named and served defendants in the case—Biomet, Inc. and Zimmer Biomet Holdings, Inc—join in this Notice and consent to removal. Neither Baffes nor Boneafide are properly joined parties to this action, and their consent to removal is irrelevant. *See* 28 U.S.C. § 1446(b)(2)(A); *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993).

6.     Civil District Court for the Parish of Orleans is located within the Eastern District of Louisiana. 28 U.S.C. § 98(a). Therefore, venue is proper because the Eastern District is the "district and division embracing the place where such action is pending." *See* 28 U.S.C. § 1441(a).

7.     Pursuant to 28 U.S.C. § 1446(d), Zimmer Biomet is filing a written notice of this removal with the Civil District Court for the Parish of Orleans, which along with this Notice, is also being served upon Plaintiff's counsel.

8.     As detailed below, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action (a) between citizens of different states and (b) the amount in controversy exceeds $75,000, exclusive of costs and interest.

**A.     There is Complete Diversity Among the Properly Joined Parties.**

9. Whether diversity exists in an action is determined by looking at the citizenship of each party at the time the complaint was filed. *Hazelton v. Union Pac. R.R. Co.*, 497 F. Supp. 2d 800, 804 (W.D. La. 2007). The citizenship of improperly joined defendants is irrelevant to the diversity inquiry.[2] *See Heritage Bank v. Redcom Laby's, Inc.*, 250 F.3d 319, 313 (5th Cir. 2001). Here, there is complete diversity among the properly joined parties in the case.

10. Plaintiff is domiciled in Louisiana and, thus, is a citizen of Louisiana. *See* Ex. A, Pet. at p. 1; *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974) ("For diversity purposes, citizenship means domicile[.]").

11. Defendant Biomet, Inc. is corporation existing under the laws of the State of Indiana, with its principal place of business in Warsaw, Indiana. Thus, Biomet, Inc. is a citizen of Indiana. *See* 28 U.S.C. § 1332(c)(1).

12. Defendant Zimmer Biomet Holdings, Inc. is a corporation existing under the laws of the State of Delaware, with its principal place of business in Warsaw, Indiana. Thus, Zimmer Biomet Holdings, Inc. is a citizen of Delaware and Indiana. *See* 28 U.S.C. § 1332(c)(1).

13. Accordingly, there is complete diversity between Plaintiff and the only two properly joined defendants in this case: Biomet, Inc. and Zimmer Biomet Holdings, Inc.

---

[2] The terms "improper joinder" and "fraudulent joinder" are used interchangeably, and the Fifth Circuit has noted that "there is no substantive difference between the two terms," though "'improper joinder' is preferred." *Smallwood v. Illinois Cent. R. Co.,* 385 F.3d 568, 571 n.1 (5th Cir. 2004).

### *i. Defendants Baffes and Boneafide are improperly joined to this case.*

14. The citizenship of Baffes and Boneafide are irrelevant because they have been improperly joined to this action, as Plaintiff has "no reasonable basis" to recover from them. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 199-200 (5th Cir. 2016).

15. To determine whether a defendant is improperly joined, a court looks to whether there is a "reasonable basis for predicting that state law might impose liability on the resident defendants under the facts alleged[.]" *Tedder v. F.M.C. Corp.*, 590 F.2d 115, 117 (5th Cir. 1979). If there is no such reasonable basis, "then the claim is deemed fraudulent and lack of diversity will not prevent removal." *Id.* The mere theoretical possibility of recovery against a resident defendant will not suffice to preclude removal. *Badon v. RJR Nabisco Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000). A court may "pierce the pleadings" and consider "summary judgment-type evidence such as affidavits and deposition testimony" in determining whether a resident defendant was improperly joined. *Cavallini v. State Farm Mut. Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995) (citation omitted); *accord Griggs v. State Farm Lloyds*, 181 F.3d 694 (5th Cir. 1999).

16. Plaintiff brings this personal injury case based upon the implantation of a Vanguard Total Knee System (the "Vanguard Knee") in his right knee on July 30, 2012. Ex. A, Pet. at ¶¶ 1, 8. According to Plaintiff, the E1 Tibial Bearing used in the Vanguard Knee was defective, requiring Plaintiff to undergo a revision surgery "due to the wear of the tibial bearing." *E.g.*, *id.* at ¶ 13. Plaintiff asserts that, as a result of this alleged defect, he "was caused and/or in the future will be caused, [*sic*] to suffer severe personal injuries, pain and suffering, emotional distress,

4

financial or economic loss, including, but not limited to, obligations for medical services and expenses, present and future, and other damages."[3]  *E.g., id.* at ¶ 35.

17. Plaintiff asserts claims against all Defendants concerning the Vanguard Knee and the E1 Tibial Bearing that sound in products liability, including (1) negligence, (2) strict liability – defective design, (3) strict liability – manufacturing defects, (4) strict liability – failure to warn, (5) gross negligence, and (6) product liability. *See generally id.* With respect to the manufacturing defendant, Zimmer Biomet, these causes of action are subsumed by the Louisiana Products Liability Act, which "establishes the exclusive theories of liability for manufacturers for damage caused by their products." LA. REV. STAT. ANN. § 9:2800.52 (West 2014); *see also Lawson v. Mitsubishi Motor Sales of Am., Inc.*, 2005-0257 (La. 9/6/06), 938 So. 2d 35, 46.

18. According to Plaintiff, Baffes "was acting as a sales representative for the sale of artificial knee implants manufactured by Zimmer Biomet." Ex. A, Pet. at ¶ 3. Boneafide "was the employer of Greg Baffes and, at all relevant times, served as a distributor of the artificial knee implants manufactured by Zimmer Biomet." *Id.* at ¶ 4. Plaintiff does not claim—and cannot—that either manufactured the devices at issue in this lawsuit.

19. In order to prevail on the claims asserted against the non-manufacturing defendants Baffes and Boneafide, Plaintiff must prove that (1) the product sold was defective, (2) the non-manufacturing seller had actual or constructive knowledge that the product sold was defective; and (3) the non-manufacturing seller failed to declare the defect. *See Brown v. Johnson & Johnson*,

---

[3] Plaintiff's wife, Margo Daniels, purports to bring a loss of consortium claim. Ex. A, Pet. at ¶¶ 49-50. However, Ms. Daniels was not named as a plaintiff in the Action. Accordingly, the singular "Plaintiff" is used in this Notice. Moreover, to the extent she is asserting a loss of consortium claim, that claim is derivative of all the other causes of action asserted by her husband. Any loss of consortium claim predicated on the futile claims against the nondiverse defendants cannot impose liability.

2015 WL 6128706, at *2 (E.D. La. Oct. 16, 2016) (citation omitted) (Fallon, J.). Under Louisiana law, a non-manufacturing seller, such as a sales representative or distributor, that "does not vouch for the product by holding it out as his [or her] own" cannot be held liable under a strict product liability theory; rather, such a seller "is responsible for damages in tort 'only if he [or she] knew or should have known that the product sold was defective, and failed to declare it.'" *Slaid v. Evergreen Indem., Ltd.*, 745 So. 2d 793, 797 (La. Ct. App. 2d Cir. 2015) (citation omitted); *see also Tunica-Biloxi Indians of Louisiana v. Pecot*, 2006 WL 1228902, at *2-3 (W.D. La. May 3, 2006). Unlike a manufacturer, the "non-manufacturing seller of a product is not presumed to have knowledge of a product's vices[.]" *Diaz v. Goodyear Tire & Rubber Co.*, 2008 WL 4528186, at *6 (M.D. La. Oct. 1, 2008). Likewise, such a seller "is not required to inspect the product it sells prior to sale to determine the possibility of any inherent vices or defects in the product." *Id.* Importantly, "[m]ere alleged constructive knowledge is not enough to establish a negligence claim" against a non-manufacturing seller. *Daniels v. Touro Infirmary*, 2011 WL 6140869, at *2 (E.D. La. Dec. 9, 2011) (denying motion to remand where this same plaintiff could not establish the distributor had actual knowledge of product defect and relied only on mere allegations of constructive knowledge); *see also Brown*, 2015 WL 6128706, at *3 (similar).

20.     Courts applying Louisiana law routinely find sales representatives and distributors to be improperly joined in product liability suits. *See Brown*, 2015 WL 6128706, at *2-3 (denying motion to remand where plaintiff failed to establish a sales representative's actual knowledge of product defect and merely alleged constructive knowledge of defect); *Diaz*, 2008 WL 4528186, at *6 (similar); *Whitley v. Premier Nissan, L.L.C.*, 2018 WL 6199916, at *4 (E.D. La. Nov. 28, 2018) (denying motion to remand where plaintiff could not refute affidavit evidence that defendant dealership did not know, and could not have known, of the alleged defects in the product at issue).

Plaintiff—and his counsel—are well-aware of this fact having previously sued another nondiverse sales representative and distributor in a separate products liability suit over medical devices implanted in Plaintiff's knee. *See Daniels*, 2011 WL 6140869, at *2. Judge Lemelle exercised jurisdiction over that case because the sales representative and distributor—as a non-manufacturing seller of the device—was improperly joined to that lawsuit having no knowledge of the alleged defects. *Id.*

21.     The same result is warranted here. Baffes and Boneafide do not design, manufacture, test, label, or package any of Zimmer Biomet's products, nor do they ever inspect the Vanguard Knee and E1 Tibial Bearings products delivered to patients, as those products are packaged by Zimmer Biomet in sterile, sealed containers that are to remain sealed until the surgical operation. Ex. B, Baffes Decl. at ¶¶ 4, 12; Ex. C, Zeringue Decl. at ¶¶ 4, 11.[4] Baffes and Boneafide have no knowledge of any of the alleged defects at issue in this case (just like the nondiverse defendants in the prior lawsuit brought by Mr. Daniels). *See* Ex. B, Baffes Decl. at ¶ 23; Ex. C, Zeringue Decl. at ¶ 23. Accordingly, Baffes and Boneafide are improperly joined to this action because Plaintiff cannot establish they "knew or should have known that the product sold was defective, and failed to declare it." *Slaid*, 745 So. 2d at 797.

22.     Plaintiff's claims that Baffes and Boneafide failed to communicate the "results of clinical studies of the E1 Tibial Bearings" in the Vanguard Knee are likewise unavailing. *See* Ex. A, Pet. at ¶ 16. Critically, Plaintiff's Petition fails to explain ***how*** Baffes and/or Boneafide, as a non-manufacturing sales representative and distributor respectively, knew or should have known

---

[4] Courts may pierce pleadings and consider extrinsic evidence such as the declarations executed by Baffes and Boneafide because plaintiff has misstated or omitted facts relevant to joinder. *See Smallwood*, 385 F.3d at 573.

of these clinical studies.[5] They have no role in design, conducting, monitoring, or analyzing data derived from clinical trials. Ex. B, Baffes Decl. at ¶¶ 16-17; Ex. C, Zeringue Decl. at ¶¶ 16-17. They have no knowledge of any clinical studies establishing the alleged unreasonably high risk of failure of the devices at issue. Ex. B, Baffes Decl. at ¶¶ 19-23; Ex. C, Zeringue Decl. at ¶¶ 19-23. Rather, Plaintiff relies on the sort of conclusory allegations that are "not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).[6]

23. Moreover, Plaintiff's allegations against Baffes and Boneafide are contradicted by his allegations that Zimmer Biomet hid the results of clinical studies concerning the E1 Tibial Bearings and adverse events associated with the bearings. *See* Ex. A, Pet. at ¶¶ 10-12, 15; *see also In re PPA Prods. Liab. Litig.*, 2002 WL 34418423, at *3 ("[T]he complaint alleges that the manufacturer defendants concealed material facts regarding the [product, which] . . . directly undermines and contradicts the idea that [the distributor] had knowledge or reason to know of alleged defects."). The allegations that Zimmer Biomet concealed the studies belie any inference that Baffes or Boneafide—who relied upon Zimmer Biomet to provide all information concerning

---

[5] Plaintiff's Petition is not a bastion of clarity as to the claims against Baffes and Boneafide. From the pleadings, it appears that the allegedly concealed results of the clinical studies are germane because they concerned "the potential unreasonably high risk of failure [in the Vanguard Knee] when used for its intended and reasonably foreseeable purpose." Ex. A, Pet. at ¶ 37. But Plaintiff does not identify what specific risks or warnings Baffes or Boneafide allegedly knew or should have known that were not already included in the product's warning and instructions for use.

[6] Moreover, to the extent Plaintiff's allegations against Baffes and Boneafide are vague and directed all defendants named in the Petition, Plaintiff has failed to adequately plead any claims against the named resident defendants. *See Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999) (finding resident defendant was improperly joined where he was only referred to "in passing" and directed all specific allegations toward the diverse defendants); *see also In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 2002 WL 34418423, at *2 (W.D. Wa. Nov. 27, 2002) (noting that "complaint utilize[d] the plural 'defendants' in a number of allegations that one could not reasonably interpret to include [the resident defendant]" and holding that the plaintiff failed to state a claim against the resident defendant).

the device—had knowledge or should have had knowledge of the studies. Ex. B, Baffes Decl. at ¶¶ 9, 23; Ex. C, Zeringue Decl. at ¶¶ 10, 23. Baffes and Boneafide exclusively relied on Zimmer Biomet-supplied information and product literature, and neither had any knowledge of the alleged defects associated with the Vanguard Knee. Ex. B, Baffes Decl. at ¶¶ 9, 19-23; Ex. C, Zeringue Decl. at ¶¶ 10, 19-23.

24.  Setting aside the inconsistencies in the Petition, Baffes and Boneafide were not aware of the clinical studies referenced therein. Ex. B, Baffes Decl. at ¶¶ 19-23; Ex. C, Zeringue Decl. at ¶¶ 19-23. They have no knowledge of any clinical studies establishing the alleged unreasonably high risk of failure of the devices at issue. Ex. B, Baffes Decl. at ¶¶ 19-23; Ex. C, Zeringue Decl. at ¶¶ 19-23. Plaintiff therefore cannot establish these defendants had actual knowledge of any alleged product defect. *See Whitley*, 2018 WL 6199916, at *4 (denying motion to remand where plaintiff could not refute affidavit evidence that defendant dealership did not know, and could not have known, of the alleged defects in the product at issue). As Plaintiff cannot rely on mere allegations of constructive knowledge to establish his claim, the claim must fail. *See, e.g.*, *Daniels*, 2011 WL 6140869, at *2 (denying motion to remand where this same plaintiff could not establish the sales representative had actual knowledge of product defect and relied only on mere allegations of constructive knowledge).

25.  To the extent that Plaintiff is asserting a redhibition claim against Baffes and Boneafide, there is no reasonable possibility that Plaintiff could prevail on that claim either. *See* Ex. A, Pet. at ¶ 48 (referring to Louisiana Civil Code article 2545). Neither Baffes nor Boneafide are "sellers" under redhibitory law. *See* La. Civ. Code art. 2520 ("The seller warrants the buyer against redhibitory defects, or vices, in the thing sold."); La. Civ. Code art. 2524 ("When the seller has reason to know the particular use the buyer intends for the thing, . . . the thing sold must be fit

for the buyer's intended use or for his particular purpose."); La. Civ. Code art. 2529 ("When the thing the seller has delivered, though in itself free from redhibitory defects, is not of the kind or quality specified in the contract or represented by the seller, the rights of the buyer are governed by other rules of sale and conventional obligations."); *In re Gas Water Heater Prods. Liab. Litig.*, No. 96-2484, 1996 WL 732525, at *4 (E.D. La. Dec. 12, 1996) (without proof that defendant "was either a seller or a manufacturer-distributor, the court is persuaded that there is no 'arguable and reasonable basis' that a cause of action lies" under Article 2524); *Ankum v. White Consol. Indus.*, No. 91-2990, 1992 WL 185705, at *4 (E.D. La. July 30, 1992) (same conclusion reached addressing Article 2520).

26. Under Louisiana law, a "sale" is "a contract whereby a person transfers ownership of a thing to another for a price in money." La. Civ. Code art. 2439. Consistent with this language, courts have recognized that in order to have been a "seller," a defendant would have had to own the item immediately prior to the sale. *See Ahrens v. TPLC*, 955 F. Supp. 54, 57 (E.D. La. 1997) ("holdings by Louisiana appellate courts have consistently required an ownership interest on the part of a seller in a redhibitory action"). In *Ahrens*, for example, the court denied a motion to remand where the non-diverse defendant was a sales representative for a manufacturer of pacemaker leads but did not take an "ownership interest in the leads" at any time before they were implanted in the plaintiff. *Id.* at 56.

9. Baffes and Boneafide cannot be liable in redhibition because they do not take title to or an ownership interest in the medical devices they distribute for Zimmer Biomet. *See* Ex.B, Baffes Decl. at ¶ 14 ; *See* Ex. C, Zeringue Decl. at ¶ 13. Neither pay money to Zimmer Biomet to acquire the products, nor do they receive money from the hospital, doctors, or patients for their delivery. Ex. B, Baffes Decl. at ¶¶ 14-15; *See* Ex. C, Zeringue Decl. at ¶¶ 13-14. Thus, there is no

reasonable basis to predict that Plaintiff could prevail on his redhibition claim against the nondiverse defendants.

27. Accordingly, Plaintiff's claims against Baffes and Boneafide are not viable under Louisiana law, and thus, there is no "reasonable basis for predicting" that Plaintiff can recover against these resident defendants. *See Tedder*, 590 F.2d at 117. Accordingly, their citizenship should be ignored for determining whether this Court can exercise federal diversity jurisdiction over the Action. *See Heritage Bank*, 250 F.3d at 313.

**B.     The Amount-in-Controversy Requirement is Satisfied**

28. Louisiana law prohibits a plaintiff from specifying a numerical dollar amount sought in the complaint. La. Code Civ. Proc. Ann. art. 893(A)(1) ("No specific monetary amount of damages shall be included in the allegations or prayer for relief of any original, amended, or incidental demand."). In such cases, "the removing defendant must prove by a preponderance of evidence that the amount in controversy exceeds $[75],000." *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993); *see also* 28 U.S.C. § 1332(a). A removing defendant may meet this threshold "by demonstrating that it is 'facially apparent' that the claims are likely above $75,000." *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999).

29. Here, Plaintiff alleges that Vanguard Knee and/or E1 Tibial Bearing "caused and/or in the future will be caused [*sic*], to suffer severe personal injuries, pain and suffering, emotional distress, financial or economic loss . . . , and other damages." Ex. A, Pet. at ¶ 35. Plaintiff further claims to have "incurred medical, hospital, nursing, rehabilitative, and other expenses," as well as "disability" and "loss of quality of life." *Id.* at ¶ 27.

30. Based on these allegations, it is "facially apparent" that the amount in controversy exceeds $75,000. *See, e.g., Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000)

11

(affirming trial court's finding that the amount-in-controversy requirement was met where the plaintiff "alleged damages for medical expenses, physical pain and suffering, mental anguish and suffering, loss of enjoyment of life, loss of wages and earning capacity, and permanent disability and disfigurement"); *Todd v. Delta Queen Steamboat Co.*, 2007-1518 (La. App. 4 Cir. 8/6/08), 15 So. 3d 107, 116, *aff'd on reh'g* (June 17, 2009) (affirming award of $120,000 in general damages in case of knee fracture with some ongoing impairment); *Millet v. Evangeline Health Care, Inc.*, 02-1020 (La. App. 5 Cir. 1/28/03), 839 So. 2d 357, 362 (affirming an award of $114,130 for a fractured kneecap that required two surgeries, some physical therapy, and some ongoing impairment).

31. Accordingly, the amount-in-controversy requirement is satisfied in this case. *See* 28 U.S.C. § 1332(b).

38. WHEREFORE, Zimmer Biomet prays that this action be removed from Civil District Court for the Parish of Orleans to the United States District Court for the Eastern District of Louisiana, and that this Court assumes full jurisdiction over the case as provided by law.

Dated: September 13, 2023            Respectfully submitted,

/s/Madison A. Sharko
Kim E. Moore, T.A. (La. Bar No. 18653)
Carlos A. Benach (La Bar No. 36797)
Madison A. Sharko (La. Bar No. 36670)
IRWIN FRITCHIE URQUHART MOORE &
DANIELS LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Phone: 504.310.2100
Fax: 504.310.2101
kmoore@irwinllc.com
cbenach@irwinllc.com
msharko@irwinllc.com

*Counsel for Defendants Biomet, Inc. and Zimmer Biomet Holdings, Inc.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the above and foregoing has been served upon all counsel by facsimile, electronic mail and/or by placing a copy of same in the United States Mail, postage prepaid and properly addressed, this 13th day of September, 2023.

                                                */s/Madison A. Sharko*