## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JAMES DANIELS**                                    **CIVIL ACTION**

**VERSUS**                                           **NO. 23-5237**

**BIOMET, INC. et al.**                              **SECTION: "G"(2)**

## ORDER AND REASONS

In this litigation, Plaintiff James Daniels ("Plaintiff") alleges that he suffered personal injuries after a defective artificial knee replacement device was implanted into his body during a surgery.[1] On August 2, 2023, Plaintiff filed a petition in the Civil District Court for the Parish of Orleans, State of Louisiana against Defendants Biomet, Inc. and Zimmer Biomet Holdings, Inc. (collectively, "Zimmer Biomet") as manufacturers of the allegedly defective artificial knee replacement device implanted in Plaintiff's knee.[2] Plaintiff also named Greg Baffes ("Baffes"), and Boneafide Orthopaedics, Inc. ("Boneafide") as Defendants and alleges that they were the sales representative and distributor, respectively, of the artificial knee replacement device.[3] On September 13, 2023, Zimmer Biomet removed the case to this Court based on diversity jurisdiction under 28 U.S.C. Section 1332(a).[4]

---

[1] *See* Rec. Doc. 1-1.

[2] *Id.* at 2.

[3] *Id.* at 2–3.

[4] Rec. Doc. 1.

1

Although Baffes and Boneafide are citizens of Louisiana, Zimmer Biomet argue that their citizenship should be ignored for jurisdictional purposes because they were improperly joined.[5] Pending before the Court is Plaintiff's Motion to Remand.[6] For the reasons discussed in more detail below, Zimmer Biomet have not carried their "heavy burden" of showing that Plaintiff cannot state a claim against Baffes and Boneafide.[7] Accordingly, having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants Plaintiff's Motion to Remand, and remands this case to state court.

## I. Background

### A.    *Factual Background*

In the petition, Plaintiff alleges that Zimmer Biomet are the manufacturers of the Vanguard Total Knee System, an artificial knee replacement device.[8] Included in the Vanguard Total Knee System ("Vanguard Knee System") is the E1 Tibial Bearing, which Plaintiff alleges was "marketed, advertised, and sold by Zimmer Biomet as a new class of polyethylene bearings that achieves long-term oxidative stability by infusing the antioxidant, Vitamin E, into polyethylene and thereby improves the wear performance and mechanical properties."[9] Plaintiff alleges that he underwent his first surgery performed by Dr. Lance Estrada ("Dr. Estrada") to implant the Vanguard Knee System in his right knee on July 30, 2012.[10] Plaintiff further alleges that after this

---

[5] *Id.*

[6] Rec. Doc. 8.

[7] *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (en banc).

[8] Rec. Doc. 1-1 at 2.

[9] *Id.* at 3.

[10] *Id.*

first surgery, he began experiencing pain due to the wear of the E1 Tibial Bearing and ultimately followed the advice of Dr. Estrada to undergo a revision surgery on August 20, 2022.[11]

Plaintiff alleges that Boneafide is a distributor of the Vanguard Knee System.[12] Plaintiff further alleges that Boneafide is a Louisiana corporation with its principal place of business in Beaux Bridge, Louisiana.[13] Plaintiff alleges that Baffes is an employee of Boneafide, working as a sales representative who sold the Vanguard Knee System to hospitals.[14] Plaintiff alleges that as part of the sales contract between Boneafide and Zimmer Biomet, Baffes was "trained by Zimmer Biomet in the proper method of implantation, use, warnings, and limitations of the devices in order to educate the surgeons who would eventually implant the devices."[15] Plaintiff alleges that Baffes was "specifically trained by Zimmer Biomet in connection with the Vanguard Artificial Knee device, including the E1 Tibial Bearing, prior to [Plaintiff's] surgery."[16] Plaintiff alleges Baffes is domiciled in Orleans Parish, Louisiana.[17]

Plaintiff alleges that as a result of the implantation of the Vanguard Knee System, which contained the E1 Tibial Bearing that wore down prematurely, he suffered an additional surgery to correct the defect, personal injuries, medical rehabilitation for the injuries, medical costs, and

---

[11] *Id.* at 4.

[12] *Id.* at 2–3.

[13] *Id.* at 2.

[14] *Id.* at 3.

[15] *Id.*

[16] *Id.*

[17] *Id.*

emotional distress.[18] Plaintiff brings negligence, design defect strict liability, manufacturing defect strict liability, gross negligence, and products liability claims under Louisiana law against Defendants.[19] Central to Plaintiff's claims against Defendants is Plaintiff's allegation that Defendants failed to report results of clinical studies of the E1 Tibial Bearings that "track[ed] the wear, mechanical performance, and patient satisfaction of the E1 Tibial Bearings [which] concluded in 2021 …"[20] Plaintiff alleges that he would not have undergone the second surgery in 2022 if these clinical studies were released.[21]

### B.   Procedural Background

On August 2, 2023, Plaintiff filed a petition in the Civil District Court for the Parish of Orleans, State of Louisiana, against Defendants.[22] On September 13, 2023, Zimmer Biomet removed the case to this Court pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332(a).[23] Zimmer Biomet assert that Plaintiff, a Louisiana citizen, is completely diverse from Biomet and Zimmer.[24] Zimmer Biomet further argue that Plaintiff improperly joined Baffes and Boneafide, both Louisiana citizens, as Plaintiff has no possibility of recovery against Baffes and Boneafide.[25] In its Notice of Removal, Zimmer attached the affidavit of Baffes, in which he

---

[18] *Id.* at 5–8.

[19] *Id.*

[20] *Id.* at 3–4.

[21] *Id.* at 4.

[22] *Id.* at 2.

[23] Rec. Doc. 1 at 1–2.

[24] *Id.* at 3.

[25] *Id.* at 4–11.

declares that he had no knowledge of defects in the Vanguard Knee System.[26] Zimmer also attached the affidavit of Shane Zeringue, the Principal of Boneafide in which he declares that Boneafide does not have knowledge of defects in the Vanguard Knee System.[27]

On September 21, 2023, Plaintiff filed a motion to remand, contending that Baffes and Boneafide were properly joined so that this Court does not have diversity jurisdiction.[28] On October 10, 2023, Zimmer Biomet filed a response opposing the motion.[29] On October 19, 2023, Plaintiff filed a reply to Zimmer Biomet's response.[30] On October 20, 2023, Zimmer Biomet filed a sur-reply to Plaintiff's reply.[31] On October 26, 2023, Plaintiff filed a sur-reply to Zimmer Biomet's sur-reply.[32]

## II. Parties' Arguments

### A.    Plaintiff's Motion to Remand

In his Motion to Remand, Plaintiff argues that this case should be remanded to state court.[33] Plaintiff argues that he has a reasonable basis for recovery from Baffes and Boneafide because Baffes testified in an earlier medical products liability case, *Daniels v. Baffes, et al.*, ("*Daniels v.*

---

[26] Rec. Doc. 1-2 at 5.

[27] Rec. Doc. 1-3 at 5.

[28] Rec. Doc. 8.

[29] Rec. Doc. 9.

[30] Rec. Doc. 17.

[31] Rec. Doc. 19.

[32] Rec. Doc. 22.

[33] Rec. Doc. 8 at 1; Rec. Doc. 8-1 at 1.

*Baffes*") that he was aware of the failure mode of certain Zimmer Biomet's medical devices.[34] Plaintiff thus contends that Baffes' testimony there contradicts his "self-serving Declaration" in this instant case.[35] Plaintiff notes that this instant case and *Daniels v. Baffes* involve the same parties and concern another Zimmer Biomet medical device.[36] Plaintiff also notes that "Baffes testified that he was specifically trained by Zimmer Biomet in connection with the Vanguard Artificial Knee device."[37]

Plaintiff next argues that Baffes testified that he "uses his engineering background in connection with evaluating the failure mode of Biomet devices …"[38] Plaintiff notes that Baffes has reviewed Daniels' x-rays in *Daniels v. Baffes* and discussed the failure mode of the device there with Dr. Estrada.[39] Plaintiff also notes that Baffes communicated with Zimmer Biomet representatives with suggestions for correcting the failure modes in Zimmer Biomet products.[40] Plaintiff further notes that Baffes testified that he has a duty to report failure modes to Zimmer Biomet by filling out a reporting form.[41]

---

[34] Rec. Doc. 8-1 at 1–9 (citing *Daniels v. Baffes, et al.*, No. 2019-6791 (Civ. Dist. Ct. 2019)).

[35] *Id.* at 3.

[36] *Id.* at 4.

[37] *Id.*

[38] *Id.* at 5.

[39] *Id.* at 5–6.

[40] *Id.* at 6.

[41] *Id.*

Plaintiff also argues that Baffes was aware of the risks of polyethylene, a material contained in the E1 Tibial Bearing that was implanted into Plaintiff with the Vanguard Knee System.[42] Plaintiff further argues that whether Baffes spoke to Dr. Estrada or Zimmer Biomet about the failure mode of the polyethylene product and whether the clinical studies Zimmer Biomet performed on the polyethylene component that demonstrated the failure mode are both questions of fact to be resolved by a fact-finder.[43] Plaintiff offers that the Court could cross-examine Baffes and Zeringue on their Declarations and could order the two clinical studies evaluating the E1 Tibial Bearings be produced.[44]

**B.      Biomet and Zimmer's Response Opposing Plaintiff's Motion**

Zimmer Biomet oppose the motion to remand. First, Zimmer Biomet contend that Plaintiff did not address Zimmer Biomet's referenced "cases similar to the instant case [that] have found sales representatives and distributors to be improperly joined in product liability suits and denied remand."[45]

Second, Zimmer Biomet counter that Baffes' deposition testimony from *Daniels v. Baffes* is an unrelated case that concerns an "unrelated knee product that does not use the Vanguard Knee or the E1 Tibial Bearing to conjure up non-existent inconsistence with the Baffes Declaration …"[46] Zimmer Biomet reason that in *Daniels v. Baffes*, the medical device at issue was the OSS

---

[42] *Id.* at 8–9.

[43] *Id.* at 9.

[44] *Id.* at 11.

[45] Rec. Doc 9 at 4–5 (citing *Brown v. Johnson & Johnson*, No. 15-2308, 2015 WL 6128706, at *2 (E.D. La. Oct. 16, 2016) (Fallon, J.); *Daniels v. Touro Infirmary*, No. 11-1586, 2011 WL 6140869, at *2 (E.D. La. Dec. 9, 2011) (Lemelle, J.)).

[46] *Id.* at 5.

Orthopedic Salvage System and Compress Device (collectively, the "OSS Salvage System") and that this was implanted in Plaintiff's left knee.[47] Zimmer Biomet contend that "Dr. Estrada used the OSS Salvage System on Plaintiff's left leg" while Dr. Estrada used the "Vanguard Knee, which is a traditional knee replacement system intended for use in standard reconstruction surgeries" on Plaintiff's right knee.[48] Zimmer Biomet also argue that "the OSS Salvage System and Vanguard Knee do not share the same polyethylene bearing."[49]

Third, Zimmer Biomet contend that Baffes' deposition testimony does not show that he was the "first" to know about alleged failure modes.[50] Zimmer Biomet explain that Baffes' deposition testimony actually shows that it was Dr. Estrada who first noticed the failure mode on the OSS Salvage System, as Dr. Estrada called Baffes into his office to look at x-rays of Plaintiff's knee.[51]

Fourth, Zimmer Biomet contend that the term "defect" is not the same as "failure mode" for a medical device as "[m]edical devices can fail or cause adverse symptoms for numerous reasons that are not related to a defect," and Baffes did not use the term defect in his testimony.[52] Relatedly, Zimmer Biomet contend that Baffes' testimony regarding device failure modes was only based on hypothetical questions Plaintiff's counsel asked Baffes, rather than Baffes' actual

---

[47] *Id.* at 9.

[48] *Id.* at 11.

[49] *Id.* (emphasis in original).

[50] *Id.* at 12.

[51] *Id.*

[52] *Id.*

conduct.[53] Zimmer Biomet also contend that Baffes reported device failure modes to Zimmer Biomet because federal regulations require that manufacturers like Zimmer Biomet establish such a process for distributors and sales representatives to report device failures.[54]

Fifth, Zimmer Biomet counter that Baffes' testimony does not show that he designed any part of the OSS Salvage System, only that "he merely had a conversation with a Zimmer Biomet engineer in which he presented an idea that would allegedly 'improve the device.'"[55] Zimmer Biomet also rejects Plaintiff's assertion that Zimmer Biomet accepted Baffes' suggestion for improvement of the device, as the Zimmer Biomet "engineer told Baffes that Zimmer Biomet was already 'kind of working on ideas.'"[56]

Sixth, Zimmer Biomet contend that Plaintiff neither alleges in the petition that Baffes and Boneafide had knowledge of the EI Tibial Bearings defect nor does Plaintiff offer evidence of this knowledge in the motion.[57] Zimmer Biomet note that the only study that Baffes and Boneafide would have been aware of is a study ("Dr. Crawford Study") found on Biomet's online literature that claims the Vanguard Knee has a 96.4% survivorship rate at 10 years.[58] Relatedly, Zimmer Biomet contend that Baffes' testimony regarding his "awareness of a failure risk is not the same as awareness of a defect …"[59] Zimmer Biomet also note that the OSS Salvage System does not

---

[53] *Id.* at 13.

[54] *Id.* at 13–14.

[55] *Id.* at 14.

[56] *Id.* at 15.

[57] *Id.*

[58] *Id.*

[59] *Id.* at 16 (citation omitted).

use the E1 Tibial Bearing system and that the OSS Salvage System and the Vanguard Knee do not use the same polyethylene component.[60]

Seventh, Zimmer Biomet argue that Plaintiff's request for sharply tailored discovery is unnecessary because there are no inconsistencies between Baffes' deposition in *Daniels v. Baffes* and his declaration in this instant case.[61] Zimmer Biomet also note that Plaintiff has stated that this sharply tailored discovery is not necessary and that the Fifth Circuit has held that such discovery should not be allowed unless there is a "showing of its necessity."[62]

## C.   *Plaintiff's Reply*

In his reply, Plaintiff contends that it is "irrelevant" that Baffes' testimony in *Daniels v. Baffes* concerns a different medical device because "[t]he seminal issue is the extent of Baffes' training and actual knowledge of product failures and defects, and what he communicates to surgeons regarding the product before and during surgery."[63] Plaintiff further contends that "[i]t is highly unlikely that Baffes changed his product sales behavior, including knowledge of product failures, for this single Biomet component."[64]

Plaintiff next argues that "failure mode" and "defect" both mean that "the product is failing to perform as intended and advertised by the manufacturer."[65] Plaintiff further argues that it is the role of discovery to uncover whether the polyethylene used in the OSS Salvage System that Baffes

---

[60] *Id.* at 17.

[61] *Id.* at 17–18.

[62] *Id.* at 18 (citing *Smallwood*, 385 F.3d at 574).

[63] Rec. Doc. 17 at 1.

[64] *Id.*

[65] *Id.* at 2.

testified about is different from the polyethylene used in the Vanguard Knee system in this instant case.[66]

Plaintiff then notes that the Dr. Crawford Study does not involve the polyethylene found in the E1 Tibial Bearings, because the subjects of Dr. Crawford's Study received their implants between 2003 and 2008, but the FDA did not approve the E1 Tibial bearing for use until June 17, 2008.[67] Based on Zimmer Biomet's reference to this study, Plaintiff contends that "all polyethylene made by Biomet is substantially the same for studying its failure mode."[68]

### D.    *Zimmer and Biomet's Sur-Reply*

In their sur-reply, Zimmer Biomet contend that Plaintiff has failed to show that Baffes and Boneafide had actual knowledge of the defect in the Vanguard Knee System, which is what Zimmer Biomet contend Louisiana law requires.[69] Zimmer Biomet reason that Plaintiff has only shown that Baffes and Boneafide had constructive knowledge of the defect in the Vanguard Knee System.[70] Zimmer Biomet next counters that there are differences between a "failure mode" and a "defect" because "Louisiana law recognizes that medical devices can fail for reasons entirely unrelated to product defect."[71] Zimmer Biomet then counters that their reference to the Dr. Crawford Study was "for the narrow purpose of demonstrating that Baffes and Boneafide could

---

[66] *Id.* at 3.

[67] *Id.* at 3–4 (citation omitted).

[68] *Id.* at 4.

[69] Rec. Doc. 19 at 2 (citing *Daniels v. Touro Infirmary*, 2011 WL 6140869, at *2 ("Mere alleged constructive knowledge is not enough to establish [such a claim].")).

[70] *Id.*

[71] *Id.* (citing *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 314 (5th Cir. 2017)).

'boast about the long life of the [Vanguard Knee]' without knowing about the alleged clinical studies conducted on the E1 Tibial bearing because the product literature expressly provided a survivorship rate for the Vanguard Knee at ten years."[72]

### E.    *Plaintiff's Sur-Reply*

In his sur-reply, Plaintiff argues that "[e]ither the polyethylene is so different that Biomet shouldn't tell surgeons that they can rely on the Dr. Crawford Study, or it is not so different that Baffes' testimony about the failure mode of the polyethylene applies to the polyethylene in this case, as well."[73] Plaintiff asserts that he has sufficiently plead a claim against Baffes and whether the E1 Tibial Bearing in the Vanguard Knee System contains the same polyethene in the OSS Salvage System that Baffes testified about in *Daniels v. Baffes* will be a factual determination that experts can assist with.[74] Plaintiff avers that limited discovery of Baffes and production of the studies referred to in his motion is necessary to resolve the issues in this motion to remand.[75]

### III. Legal Standard

A defendant may remove a state civil court action to federal court if the federal court has original jurisdiction over the action.[76] Pursuant to 28 U.S.C. § 1332, a district court has subject matter jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States[.]" The

---

[72] *Id.* at 4.

[73] Rec. Doc. 22 at 1.

[74] *Id.*

[75] *Id.*

[76] 28 U.S.C. § 1441(a); *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 34 (2002).

removing party bears the burden of demonstrating that federal jurisdiction exists.[77] In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that "removal statute[s] should be strictly construed in favor of remand."[78] Remand is appropriate if the Court lacks subject matter jurisdiction, and "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."[79]

Improper joinder provides a "narrow exception" to the complete diversity requirement for removal jurisdiction.[80] "The party seeking removal bears a heavy burden of proving that joinder of the in-state party was improper."[81] Any contested issues of fact and any ambiguities of state law must be resolved in the plaintiff's favor.[82] The court must also take into account the "status of discovery" and consider what opportunity the plaintiff has had to develop its claims against the non-diverse defendant.[83] The district court is "not to conduct a mini-trial" of the plaintiff's claims, but must only determine whether there is a possibility that the plaintiff had set forth a valid cause

---

[77] *See Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

[78] *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

[79] *Acuna v. Brown & Root Inc*., 200 F.3d 335, 339 (5th Cir. 2000) (citing *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988)).

[80] *McDonal v. Abbott Lab'ys*, 408 F.3d 177, 183 (5th Cir. 2005).

[81] *Smallwood,* 385 F.3d at 574.

[82] *McKee v. Kan. City S. Ry. Co.*, 358 F.3d 329, 334 (5th Cir. 2004).

[83] *Id.*

13

of action against that defendant.[84] Unless it is clear that the non-diverse defendant has been improperly joined, the case should be remanded to the state court from which it was removed.[85]

If a non-diverse defendant has been improperly joined to an action, a party may remove the action by showing either: (1) actual fraud in pleading jurisdictional facts; or (2) inability of the plaintiff to establish a cause of action against the non-diverse defendant.[86] Under the second prong, joinder is improper if "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[87]

District courts may assess whether a plaintiff has "a reasonable basis of recovery under state law" in either of two ways. First, the court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant.[88] Second, in rare cases, if "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder . . . the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry."[89] If a court decides to "pierce the pleadings" when assessing a claim of fraudulent joinder, it may "consider summary judgment-type evidence in the record, but must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff," and resolve "[a]ny contested issues of fact and any ambiguities of state

---

[84] *Id.* at 336 (citing *Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003)).

[85] *Id.* at 337.

[86] *Smallwood*, 385 F.3d at 573 (citing *Travis*, 326 F.3d at 646–47).

[87] *Id.*; *see also Landry v. State Farm Fire & Cas. Co.*, 428 F. Supp. 2d 531, 536 (E.D. La. 2006).

[88] *Id.*

[89] *Id.*

law" in the plaintiff's favor.[90] However, in conducting a summary inquiry for the purposes of determining fraudulent joinder, the court does not assess "whether the plaintiff will actually or even probably prevail on the merits of the claim," but only determines whether there is "a possibility that the plaintiff might do so."[91] In other words, where courts choose to pierce the pleadings, the party asserting fraudulent joinder must provide evidence that "negate[s] the possibility" that the non-diverse party may be held liable.[92]

## IV. Analysis

In his Motion to Remand, Plaintiff contends that Zimmer Biomet improperly removed this case to this Court based on diversity jurisdiction because there is no complete diversity of the parties, as Defendants Baffes and Boneafide are Louisiana citizens and are properly joined.[93] Plaintiff contends that Baffes and Boneafide had knowledge of the Vanguard Knee System's defect—the premature wearing of the E1 Tibial Bearing containing polyethylene.[94] In opposition, Zimmer Biomet contend that removal of this case to this Court is proper because Baffes and Boneafide were improperly joined, as Plaintiff does not have a possibility of recovering from Baffes and Boneafide under Louisiana law.[95] Accordingly, to defeat Plaintiff's motion to remand, Zimmer Biomet must demonstrate that Plaintiff cannot establish a cause of action against Baffes

---

[90] *Travis*, 326 F.3d at 648–49.

[91] *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308–09 (5th Cir. 2005).

[92] *Travis*, 326 F.3d at 650.

[93] Rec. Docs. 8, 8-1, 17, 22.

[94] *Id.*

[95] Rec. Docs. 1, 9 19.

and Boneafide, *i.e.* that there would be "no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[96]

## A.   *The LPLA Claim*

### 1.   **Applicable Law**

Louisiana substantive law applies in this diversity case.[97] In Louisiana, the LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products."[98] Louisiana Revised Statue § 9:2800.53(1) defines a "manufacturer" as "a person or entity who is in the business of manufacturing a product for placement into trade or commerce."[99] The term "manufacturer" includes "[a] seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage."[100] Exercising control or influence over a product suggests "'remanufacturing, reconditioning, or refurbishing a product' as opposed to merely cosmetic repairs[]" or influencing the product in a "meaningful and creative way."[101] "The LPLA does not provide a cause of action against sellers of products not falling under the LPLA's definition of 'manufacturer.'"[102]

---

[96] *See Smallwood*, 385 F.3d at 573; *Landry*, 428 F. Supp. 2d at 536.

[97] *Ayala v. Enerco Grp., Inc.*, 569 Fed. App'x. 241, 245 (5th Cir. 2014) (citing *Seacor Holdings, Inc. v. Commonwealth Ins. Co.*, 635 F.3d 675, 680 (5th Cir. 2011)).

[98] La. Rev. Stat. Ann. § 9:2800.53.

[99] *Id.* at § 9:2800.53(1).

[100] *Id.* at § 9:2800.53(1)(b).

[101] *See Slaid v. Evergreen Indem., Ltd.*, 32–363, p. 9 (La. App. 2d Cir. 10/27/99); 745 So. 2d 793, 799 (citing John N. Kennedy, *A Primer on the Louisiana Products Liability Act*, 49 LA. L. REV. 565, 572 (1989)).

[102] *Ayala*, 569 Fed. App'x. at 245 (citing La. Rev. Stat. Ann. § 9:2800.53.).

### 2.     Analysis

In the "Product's Liability" section of the petition, Plaintiff references the LPLA and alleges that "Defendants are also deemed to be a seller in accordance with Louisiana Civil Code articles 2545, *et seq.*"[103] Because Plaintiff did not specify which "Defendants" he was referencing in that section of the petition, the Court will infer that it includes Baffes and Boneafide. To the extent that Plaintiff asserts a claim under the LPLA against Baffes and Boneafide, the LPLA does not provide a cause of action against sellers of products. Plaintiff does not allege any facts to suggest that Baffes and Boneafide could be held liable as manufacturer-sellers under the LPLA. Therefore, Plaintiff cannot recover from Baffes and Boneafide under the LPLA.[104]

## B.     *The negligence claim*

### 1.     Applicable Law

Although the LPLA does not afford Plaintiff a cause of action against Baffes and Boneafide for being sellers and distributors, Plaintiff may still bring a negligence claim against Baffes and Boneafide under Louisiana tort law. To establish a negligence claim against a non-manufacturing seller, Plaintiff must prove that: (1) the product sold by the seller was defective, (2) the seller must have had actual or constructive knowledge that the product it sold was defective, and (3) that the seller failed to declare the defect.[105] In addition, "unlike a manufacturer, a non-manufacturing

---

[103] Rec. Doc. 1-1 at 8. La. Civ. Code art. 2545 provides that "A seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees."

[104] *See Ayala*, 569 Fed. App'x. at 245.

[105] *Id.* (citing *Alexander v. Toyota Motor Sales, U.S.A.*, No. 2013-C-0756, p. 714 (La. 9/27/13); 123 So. 3d 712). *See also Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408, 1414 (5th Cir. 1993).

seller of a product is not presumed to have knowledge of a product's vices, and it is not required to inspect the product it sells prior to sale to determine the possibility of any inherent vices or defects in the product."[106]

In *Marie v. Biomet Inc., et al.*, a federal judge in the Northern District of Indiana remanded a medical device products liability case back to state court, the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana because the salesperson and distributor defeated complete diversity for the federal court to exercise diversity jurisdiction.[107] The plaintiffs originally filed a petition in state court and brought LPLA claims against several Biomet entities as manufacturers of the Biomet M2a-Magnum Hip Implant ("Magnum System").[108] The plaintiff also brought negligence claims against distributor Boneafied and Boneafied's owner, Steve Vallette ("Vallette").[109] Biomet then removed the case to this Court based on diversity jurisdiction, asserting that the plaintiffs improperly joined Boneafide and Vallette to defeat jurisdiction.[110] In its Notice of Removal, Biomet provided an affidavit from Greg Baffes, in which Baffes, as a sales representative at Boneafide, declares that he had "no knowledge of risks associated with the Biomet M2a Magnum Hip System …"[111] The Judicial Panel on Multidistrict Litigation then transferred the case into the Biomet multi-district litigation docket in the Northern District of

---

[106] *Diaz v. Goodyear Tire and Rubber Co.*, No. 07-353, 2008 WL 4528186, at *6 (M.D. La. Oct. 1, 2008) (citing *Kelley*, 992 F.2d at 1414–15).

[107] *Marie v. Biomet Inc. et al.*, Case No. 3:16-cv-872, 2017 WL 2060655, at *1 (N.D. Ind. May 15, 2017).

[108] *Id.*; Case No. 16-13138, Rec. Doc. 1-1 at 16–19.

[109] Case No. 16-13138, Rec. Doc. 1-1 at 3, 19–20.

[110] Case No. 16-13138, Rec. Doc. 1; *Marie*, 2017 WL 2060655, at *1.

[111] Case No. 2:16-cv-13138, Rec. Doc. 1-5 at 3.

Indiana.[112] The plaintiffs then moved to remand the case back to the 24th Judicial District Court for the Parish of Jefferson, arguing that Boneafide and Vallete were properly joined Louisiana defendants, as they had a reasonable possibility of recovery from Boneafide and Vallete.[113]

The presiding judge in the Northern District of Indiana granted the plaintiffs' motion to remand, in part because the plaintiffs' allegations as to the negligence claim were sufficient.[114] In the petition, the plaintiffs alleged that "ORTHOPAEDICS and VALLETTE knew the Magnum System was failing at [a] high rate and failed to disclose this information to Plaintiff … prior to installation of the Magnum System."[115] The plaintiffs also alleged that "ORTHOPAEDICS and VALLETTE represented [to] the Plaintiff … that the Magnum System is clinically proven to reduce wear when, in fact, no clinical trials were submitted for approval by the FDA."[116] The plaintiffs further alleged that "ORTHOPEDICS and VALLETTE represented [to] the Plaintiff … prior to Plaintiff's [] surgery, that the Mangum System is based on a strong clinical history and reduces wear compared to traditional hip replacement components when, in fact, no clinical history was ever provided to the FDA for approval."[117] Finally, the plaintiffs alleged that "VALLETE or an employee or agent of ORTHOPAEDICS was present in the operating room during Plaintiff's … surgery and was materially involved in selecting the Magnum Components, and failed to warn

---

[112] *Marie*, 2017 WL 2060655, at *1

[113] *Id.*

[114] *Id.* at *2, 4.

[115] Case No. 16-13138; Rec. Doc. 1-1 at 20.

[116] *Id.*

[117] *Id.*

Plaintiff … of the known defects of the Magnum."[118]After summarizing the plaintiffs' allegations as to the defendants' knowledge of the defects of the Magnum device, the presiding judge concluded that "[b]ecause I must resolve all issues of fact in favor of the plaintiff when considering Biomet's fraudulent joinder claim, I can't find that Boneafied and Mr. Vallette didn't know or shouldn't have known that the device was allegedly defective."[119]

### 2.    Analysis

In this case, Plaintiff asserts a negligence claim against "Defendants," alleging that they failed "to use reasonable care in the design, manufacture, testing packaging, labeling, marketing, and sales of the E1 Tibial Bearing …"[120] Plaintiff further alleges that the "E1 Tibial Bearings contained a defect that made them unreasonably dangerous" and that it was "defectively designed, manufactured, and/or tested and marketed as to be unreasonably dangerous to Plaintiff at the time it was implanted …"[121] Plaintiff has alleged the first element of a negligence claim, that the seller sold a defective product, against Baffes and Boneafide.[122]

As to the second element, that the seller had actual or constructive knowledge of the product's defect, Plaintiff alleges that Baffes was "trained by Zimmer Biomet in the proper method of implantation, use, warnings, and limitations of the devices in order to educate the surgeons who would eventually implant the devices," including the Vanguard Knee System and the E1 Tibial

---

[118] *Id.*

[119] *Marie*, 2017 WL 2060655, at *2.

[120] Rec. Doc. 1-1 at 5.

[121] *Id.* at 6.

[122] *See Ayala*, 569 Fed. App'x. at 245 (citing *Alexander,* 123 So.3d at 714).

Bearing.[123] Plaintiff further alleges that "[a]t all relevant times … Baffes, was either present in the operating room or in constant contact with Dr. Estrada … and marketed, represented, and sold the E1 Tibial Bearings at Touro Infirmary for implantation in Plaintiff's knee without communicating any warnings regarding its lack of long-term clinical studies supporting the long-term use of the tibial bearings in patients, such as Plaintiff."[124] Plaintiff further alleges that "[a]t the time of Plaintiff's first surgery in 2012, there had been no clinical study results published in reputable journals … by Zimmer Biomet showing long-term stability of their E1, Vitamin E infused, polyethylene."[125] Plaintiff then alleges that "Defendants Zimmer Biomet and Greg Baffes were aware of clinical studies being conducted to track the wear, mechanical performance, and patient satisfaction of the E1 Tibial Bearings concluded in 2021, but did not disclose the results of the studies to the public."[126]

As to the second element, Zimmer Biomet admit that Plaintiff has presented a theory of Baffes' constructive knowledge of the defect in the Vanguard Knee System containing the E1 Tibial Bearing, but Zimmer Biomet contend that actual knowledge is the required showing.[127] The

---

[123] Rec. Doc. 1-1 at 3. *See Marie v. Biomet Inc. et al*, No. 16-13138; Rec. Doc. 1-1 at 20 (The plaintiff's petition alleges "VALLETTE or an employee or agent of ORTHOPAEDICS was present in the operating room during Plaintiff's … surgery and was materially involve in selecting the Magnum Components, and failed to warn Plaintiff … of the known defects of the Magnum."); *Marie*, 2017 WL 2060655, at *2 (holding that the plaintiff sufficiently plead a negligence claim against sellers Vallette and Boneafide).

[124] Rec. Doc. 1-1 at 4. *See Marie v. Biomet Inc. et al*, No. 16-13138; Rec. Doc. 1-1 at 20 (The plaintiff's petition alleges that "ORTHOPAEDICS and VALLETTE represented [to] plaintiff … and/or his orthopaedic surgeon, prior to Plaintiff's … surgery, that the Magnum System is clinically proven to reduce wear when, in fact, no clinical trials were submitted for approval by the FDA and … no clinical history was ever provided to the FDA for approval"); *Marie*, 2017 WL 2060655, at *2 (holding that the plaintiff sufficiently plead a negligence claim against sellers Vallette and Boneafide).

[125] Rec. Doc. 1-1 at 3–4.

[126] *Id.* at 4.

[127] Rec. Doc. 9 at 7–8; Rec. Doc. 19 at 2.

21

Court will abide by the Fifth Circuit's citation to the Louisiana Supreme Court's rule that Plaintiff may show that the seller "had actual or constructive knowledge that the product it sold was defective" to satisfy the second required element of a negligence claim against a seller.[128] The Court construes all ambiguities in the controlling state law and all disputed questions of fact in favor of Plaintiff.[129]

Plaintiff's allegations as to Baffes' constructive knowledge of a defect in the Vanguard Knee System is imprecise and inartful. Nevertheless, because Plaintiff alleges that Baffes was involved in the surgery operations of patients using Zimmer Biomet medical devices, the Court could infer that Baffes also became aware of issues with certain Zimmer Biomet medical devices, including the Vanguard Knee System containing the E1 Tibial Bearing at issue here. In addition, Plaintiff's allegations that Zimmer Biomet trained and provided Baffes with information about a product's warnings and limitations and that Baffes and Zimmer Biomet became aware of clinical studies on the E1 Tibial Bearings allows the Court to infer that it is plausible Zimmer Biomet communicated about these clinical studies with Baffes in the course of Zimmer Biomet's training of Baffes as a salesperson for Zimmer Biomet's medical devices. Therefore, Plaintiff has adequately plead the second element of a negligence claim against Baffes and Boneafide.

As to the third element of a negligence claim, Plaintiff alleges that "Baffes [was] aware of clinical studies being conducted to track the wear, mechanical performance, and patient satisfaction of the E1 Tibial bearings concluded in 2021 but did not disclose the results of the

---

[128] *Ayala*, 569 Fed. App'x. at 245 (citing *Alexander,* 123 So.3d at 714).

[129] *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007).

studies to the public."[130]  Plaintiff here has sufficiently alleged the third element of a negligence claim against Baffes, that Baffes concealed the defect from Plaintiff.[131]

The Fifth Circuit has cautioned that the district court is "not to conduct a mini-trial" of the plaintiff's claims, but must only determine whether there is a possibility that the plaintiff had set forth a valid cause of action against the allegedly improperly joined defendant.[132] As the Fifth Circuit has further instructed, the Court need not assess "whether the plaintiff will actually or even probably prevail on the merits of the claim," but only determines whether there is "a possibility that the plaintiff might do so."[133] Here, Plaintiff has a reasonable possibility of recovery against Baffes and Boneafide, as he has sufficiently plead all three elements of a negligence claim against Baffes and Boneafide.

In "rare" cases—where the plaintiff survives a Rule 12(b)(6) analysis but  "misstate[s] or omit[s] discrete facts that would determine the propriety of joinder"—a district court "*may*, in its discretion, pierce the pleadings and conduct a summary inquiry."[134] Stated differently, the Court may end the inquiry and remand the case once the Plaintiff survives a Rule 12(b)(6) analysis.[135] That is true even when the Plaintiff misstates or omits discrete facts that would determine the propriety of joinder.[136] As discussed above, Plaintiffs survive a Rule 12(b)(6) analysis because the

---

[130] Rec. Doc. 1-1 at 4.

[131] *Ayala*, 569 Fed. App'x. at 245 (citing *Alexander,* 123 So.3d at 714).

[132] *McKee,* 358 F.3d at 336 (citation omitted)).

[133] *Guillory*, 434 F.3d at 308–09.

[134] *Vigne v. Cooper Air Freight Servs.*, No. 19-1213, 2019 WL 2710502, at *4 (E.D. La. June 28, 2019) (quoting *Smallwood*, 385 F.3d at 573) (emphasis added).

[135] *See Cumpian v. Alcoa World Alumina, L.L.C.*, 910 F.3d 216, 220 (5th Cir. 2018).

[136] *See id.*

Petition adequately pleads negligence claims against Baffes and Bonafide. Therefore, the Court need not conduct a summary inquiry. Remand is appropriate.

## V. Conclusion

Based on the foregoing, the Court finds that Zimmer Biomet have not carried their "heavy burden" of showing that Plaintiff cannot state a claim against Baffes and Bonafide.[137] Zimmer Bioment have not demonstrated that this case falls within the "narrow exception" to the complete diversity requirement of improper joinder.[138] Therefore, the Court concludes that remand of the above-captioned matter pursuant to 28 U.S.C. § 1447(c) is proper, and grants Plaintiff's motion to remand.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff James Daniels' "Motion to Remand"[139] is **GRANTED**. The case is hereby remanded to the Civil District Court for the Parish of Orleans.

**NEW ORLEANS, LOUISIANA,** this __12th__ day of January, 2024.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[137] *Smallwood*, 385 F.3d at 574.

[138] *McDonal*, 408 F.3d at 183.

[139] Rec. Doc. 8.

24